**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

GERRY SHARROB HAMPTON,

    Petitioner,

v.

CASE NO. 2:09-12842
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

NICK LUDWICK,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

Gerry Sharrob Hampton, ("petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for carjacking, M.C.L.A. 750.529a; armed robbery, M.C.L.A. 750.529; felon in possession of a firearm, M.C.L.A. 750.224f; possession of a firearm in the commission of a felony, second offense, M.C.L.A. 750.227b; and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated below, the application for a writ of habeas corpus is DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

At approximately 11:30 p.m. on September 26, 2005, Garry Young, Jr., was sitting in the passenger's seat of his mother's rented Pontiac Grand Prix in front of his house in Detroit. Young was talking on a cellular telephone and had $1,100 in his possession. A white Lincoln pulled up next to the Grand Prix, and a man later identified as defendant got out of the passenger side of the Lincoln, walked up to the Grand Prix, and held a gun to Young's head. Defendant took Young's glasses and demanded money and Young's cellular telephone, which Young gave to him. The driver of the Lincoln then opened the driver's door of the Grand Prix. Defendant opened the passenger door and told Young to get out of the car, which Young did. Defendant also told Young to run away, and Young complied. While running away, Young turned and saw defendant get into the driver's seat of the Grand Prix, which then was driven away.

Two days later, while police officers were investigating an unrelated armed robbery, they spotted the Grand Prix and conducted surveillance of the vehicle. Officers saw two individuals who matched the descriptions of the perpetrators walking toward the vehicle. Officers arrested the individuals, one of whom was defendant. Although Young identified defendant at a lineup, defendant maintained his innocence and presented an alibi defense at trial. The jury convicted defendant as charged on all counts.
*People v. Hampton,* No. 268812, * 1 (Mich.Ct.App. August 2, 2007).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 480 Mich. 1008; 743 N.W. 2d 8 (2008). Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Hampton*, No. 05-010264-01 (Third Judicial Circuit, May 22, 2008). The Michigan appellate courts denied petitioner leave to appeal. *People v. Hampton*, No. 285907 (Mich.Ct.App. November 21, 2008); *lv. den.* 483 Mich. 1108; 766 N.W. 2d 820 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his right to due process and equal protection when the trial court denied him the right to present a defense when it denied him the funds to hire an expert to challenge the identification of petitioner as one of the perpetrators of the crime.

II. The trial court erred in denying petitioner's motion to suppress the unduly suggestive lineup (the lineup was suggestive because no one else was wearing similar clothing to petitioner).

III. Petitioner's convictions are against the great weight of the evidence.

IV. Petitioner is actually innocent of the crimes he was charged with in the information.

## II. STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. DISCUSSION

### A. Claim # 1. The failure to appoint an expert on eyewitness identification.

Petitioner first contends that he was deprived of a fair trial when the trial court refused

3

to appoint an expert witness in eyewitness identification, in order to explain to the jurors the inherent unreliability of eyewitness identifications.

In *Moore v. Tate,* 882 F. 2d 1107, 1110-11 (6th Cir. 1989), the Sixth Circuit held that a defendant in a state criminal trial was not denied his constitutional right to a fair trial when the state trial court excluded expert testimony on the reliability of eyewitness identification, finding that the examination and cross-examination of a witness at trial affords a jury an adequate opportunity to assess the reliability of a witness' identification of the defendant. Although the Sixth Circuit noted that an expert witness' testimony might give jurors another perspective from which to assess an eyewitness' testimony, such testimony was not constitutionally required. *Id.; See also Buell v. Mitchell,* 274 F. 3d 337, 359 (6th Cir. 2001)("this court has recognized that a habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification").

This Court is aware that the Sixth Circuit has subsequently granted habeas relief on the ground that the exclusion of an expert on eyewitness identification deprived the habeas petitioner of a right to present a defense. *See Ferensic v. Birkett,* 501 F. 3d 469, 476-77 (6th Cir. 2007). The Sixth Circuit's ruling in that case, however, is not determinative of whether this Court should grant habeas relief from a state court conviction. A federal habeas court may not overrule a state court for holding a view different from its own, under the "contrary to" clause of the Antiterrorism or Effective Death Penalty Act (AEDPA), when the precedent from the Supreme Court is, at best, ambiguous. *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). A habeas court may therefore only look at the holdings of the United States Supreme Court as they existed at the time of the relevant state court decision to determine whether the state court

4

decision was contrary to, or an unreasonable application of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeals, when deciding whether a state court's decision was contrary to, or an unreasonable application of, clearly established federal law. *Id.* The "clearly established law" requirement contained in § 2254(d)(1) is a codification of the U.S. Supreme Court's antiretroactivity rule enunciated in *Teague v. Lane,* 489 U.S. 288 (1989), which required federal habeas courts to deny habeas relief that was contingent upon a rule of federal law which had not been announced until after the state court conviction became final. *See Williams v. Taylor,* 529 U.S. at 379-80.

This Court notes that there is no clearly established Supreme Court law which requires the appointment of an expert in eyewitness identification. The U.S. Supreme Court precedent that would most closely address petitioner's claim is *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), where the U.S. Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

The Supreme Court, however, has never extended the rule in *Ake* to apply to the appointment of non-psychiatric experts. In *Caldwell v. Mississippi,* 472 U.S. 320, 323, n. 1 (1985), the Supreme Court indicated that given that the petitioner had offered little more than undeveloped assertions that the assistance of a criminal investigator, a fingerprint expert, and a ballistics expert would be beneficial, there was no due process deprivation by the state court

judge's denial of these requests. Because the petitioner failed to make such a showing, the Supreme Court indicated that there was "no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought." *Id.*

A number of courts have held that a habeas petitioner was not entitled to habeas relief based on a state trial court's failure to appoint an expert on eyewitness identification, because the Supreme Court has yet to extend *Ake* to such non-psychiatric expert witnesses. *See Ford v. Dretke*, 135 Fed. Appx. 769, 771-72 (5th Cir. 2005)(new rule proposed by habeas petitioner, requiring the appointment of an expert on eyewitness identification, did not fall within one of the exceptions to the rule against the application of a new rule on collateral review); *Jackson v. Ylst,* 921 F. 2d 882, 886 (9th Cir. 1990)(habeas petitioner's claim that his due process rights were violated when he was denied the appointment of an expert on eyewitness identification proposed a new rule in violation of *Teague,* and therefore could not serve as a basis for federal habeas relief); *Spencer v. Hofbauer*, No. 06-12133, 2008 WL 324098, * 9 (E.D. Mich. February 6, 2008)(no clearly established Supreme Court law which requires the appointment of an expert in eyewitness identification).

Finally, as the Michigan Court of Appeals noted in rejecting petitioner's claim, *Hampton,* Slip. Op. at * 2-3, defense counsel cross-examined the victim about his ability to clearly see and later identify the perpetrator, in light of the fact that it was dark outside when the offenses were committed, that the victim was scared, that the perpetrator was holding a gun to the victim's head, and that the robbery happened fairly quickly. Defense counsel also challenged the description of the perpetrator that the victim gave to the police immediately after

the incident and argued that petitioner's lineup was suggestive. Counsel also presented several alibi witnesses who testified that petitioner was with them at the time of the robbery. Because the jury was provided with the information that allowed them reasonably to assess the credibility of the eyewitness, and the petitioner's defense of misidentification was fully aired before the jury, the state trial court judge's refusal to appoint an expert in eyewitness identification did not deprive petitioner of his right to present his mistaken identity defense. *See Williams v. Withrow,* 328 F. Supp. 2d 735, 747 (E.D. Mich. 2004). Petitioner is not entitled to relief on his claim.

### B. Claim # 2. The suggestive identification claim.

Petitioner next alleges that the trial court clearly erred in denying his motion to suppress his lineup identification because petitioner was the only person in the lineup who was wearing a black tee shirt, which was similar to what the victim described his assailant as wearing.

The Michigan Court of Appeals rejected petitioner's claim:

> The fact that defendant was wearing a black tee shirt did not distinguish him from the other lineup participants such that the lineup was impermissibly suggestive. A photograph of the lineup participants shows that three of the participants wore dark-colored shirts and the remaining four participants wore light-colored shirts. Some of the shirts contained writing or logos while some did not contain any design. Although Young described the perpetrator as wearing a black shirt, he did not indicate whether the shirt was solid black or contained lettering or print. Even assuming that the perpetrator wore a solid black shirt as defendant wore in the lineup, however, a solid black tee shirt is not a unique or distinctive clothing item such that it would distinguish defendant from the other participants and render the lineup unduly suggestive. Although defendant contends that Young identified him based on his shirt alone, this contention has no record support. According to the record, when Young viewed the lineup, he immediately identified defendant and stated, "he robbed me while I was in the car." Because it did not appear that the black tee shirt, rather than Young's recognition of defendant, was the basis for Young's identification, the identification procedure was not so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification. Further, to the extent that defendant challenges the lineup on the basis of physical

7

> differences between himself and the other lineup participants, such differences "go[
> ] to the weight of the identification and not its admissibility." Thus, the trial court did not clearly err by denying defendant's motion to suppress his lineup identification.
>
> *Hampton,* Slip. Op. at * 3-4 (internal citations omitted).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(citing *English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001)(citing *United States v. Wade*, 388 U.S. 218, 240, n. 31 (1967)). If a defendant fails to show that the

identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992).

Petitioner has failed to show that the lineup was unduly suggestive. All of the men who participated in the lineup had facial hair. The age range was between 21 and 33 years of age. Any variance between height, weight, and hair style was camouflouged by the fact that the lineup participants sat during the lineup and wore bandannas over their heads. Three of the participants in petitioner's lineup wore dark colored tee shirts. The other four participants wore white tee shirts. Some of the tee shirts had writing or logos and some did not. Although the victim described the perpetrator as wearing a black tee shirt, he did not indicate whether the tee shirt had any writing on it or not. The discrepancies between the color and the designs of the tee shirts would not render petitioner's lineup unduly suggestive. "There is no absolute requirement that other persons in a lineup be nearly identical to the suspect." *Johnson,* 344 F. Supp. 2d at 1091 (citing *Van Tran v. Lindsey*, 212 F. 3d 1143, 1156 (9th Cir. 2000)). "A lineup of clones is not required." *Id.* (quoting *United States v. Arrington*, 159 F. 3d 1069, 1073 (7th Cir. 1998)). Police officers who conduct a lineup "are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation[;]." *Id.* In light of the other circumstances surrounding the lineup, petitioner's lineup was not unduly suggestive, even if he was the only person wearing a black tee shirt in the lineup. *See U.S. v. Soto,* 124 Fed. Appx. 956, 965 (6th Cir. 2005)(photographic array from which defendant was identified was not

impermissibly suggestive, despite claim that defendant's photo was sharper and clearer than the others, that the background of his photo was lighter than the others, and that in his photo he was wearing a white shirt while all the others were in dark clothing).

Finally, petitioner's lineup attorney testified at trial that he believed that the lineup was fair and that he would have objected to the lineup being conducted if anything about the lineup was suggestive. This further supports a finding that the lineup was not unduly suggestive. *See Gullick v. Perrin,* 669 F. 2d 1, 5 (1st Cir. 1981).

Moreover, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. The victim testified that the area where he was robbed was illuminated by a street light, a porch light, and the interior light of his car. Petitioner's face was within six or seven inches of the victim's face during the robbery. The victim testified that he looked at petitioner's face during the robbery and maintained eye contact with him. The victim testified that he looked at petitioner's face, not the gun. The victim identified petitioner at a preliminary examination two weeks after the crime. At trial, the victim testified that he was one hundred percent positive of his identification of petitioner as being the perpetrator of the crime. These factors all support a finding that an independent basis existed for the victim's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001). The victim testified that the robbery took place over one to two minutes, which would be a sufficient opportunity for the victim to get a good look at petitioner's face. *See Hill*, 967 F. 2d at 232-33(finding "a couple of minutes" a sufficient opportunity to view the suspect); *See also Grayer v. McKee,* 149 Fed. Appx. 435, 439 (6th Cir.

2005)(one to two minutes sufficient opportunity to view petitioner's face, so as to support identification). Additionally, with respect to the victim's attentiveness to the situation, courts tend to "place greater trust in witness identifications made during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F. 3d 459, 473 (6th Cir. 2005); See also *United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that the victim was being robbed at gunpoint, it was not unreasonable to conclude that the victim paid a high degree of attention to his assailant.

Finally, the reliability of the victim's in-court identification is supported by the fact that he "testified without equivocation" that petitioner was his assailant. *Howard,* 405 F. 3d at 473.

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848. In light of the fact that petitioner was arrested two days later by police while walking towards the victim's car, petitioner has failed to show the substantial likelihood of irreparable misidentification. Petitioner is not entitled to habeas relief on his second claim.

### C. Claim # 3. The great weight of the evidence claim.

Petitioner next claims that the verdict went against the great weight of the evidence because the victim's identification of him as the perpetrator was unreliable and was the sole

11

evidence connecting him to the charged offenses.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Artis v. Collins,* 14 Fed. Appx. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

To the extent that petitioner challenges the sufficiency of evidence to convict him, he would not be entitled to habeas relief. In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F. 3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the

court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993)). Therefore, even if a federal habeas court might have not voted to convict a defendant had it participated in the jury deliberations, it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Secondly, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *See also Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008)(citing 28 U.S.C. § 2254(d)(1)).

In the present case, petitioner claims that there was insufficient evidence to establish his identity as the perpetrator. The weight to which eyewitness testimony is given at trial is a question of fact for the jury. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001). In this case, the victim positively identified petitioner as the man who robbed him at gunpoint. The eyewitness testimony, if believed, was sufficient to establish beyond a reasonable doubt that petitioner committed these offenses. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 839-840 (E.D. Mich. 2004). The reliability of the witness identifications was for the jury to resolve. *Id.* Moreover, the identity of a defendant can be inferred through circumstantial evidence. *Dell,* 194 F. Supp. 2d at 648. In light of the fact that petitioner was seen walking towards the victim's car only two days after the robbery, there was additional circumstantial evidence to support a finding that petitioner was the perpetrator of these crimes. Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4. The actual innocence claim.

Petitioner lastly claims that he is entitled to habeas relief on the ground that he is actually innocent of the crimes that he was convicted of. In support of his claim, petitioner has presented the affidavit of Ricardo Richard, dated September 1, 2007, in which Richard claims that he and another person, whom Richard refuses to identify, perpetrated the armed robbery and that petitioner had absolutely no involvement with the crime.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999). Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim", *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the

14

death-penalty context. Petitioner is therefore is not entitled to relief for his final claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

Finally, long-delayed affidavits like Richard's which seek to exonerate petitioner and shift the blame for the crime to another person are "treated with a fair degree of skepticism." *Herrera,* 506 U.S. at 423. In light of the fact that Richard refuses to reveal the identity of his actual accomplice, his affidavit is not entitled to credence. Petitioner is not entitled to habeas relief on his fourth claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's

claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: November 10, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 10, 2010.

s/Denise Goodine
Case Manager

16